IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

BP PRODUCTS NORTH AMERICA, INC., )
                                 )
          Plaintiff,             )
                                 )
     v.                          )   1:09cv1147 (LMB/TRJ)
                                 )
CHARLES V. STANLEY, et al.,      )
                                 )
          Defendants.            )

MEMORANDUM OPINION

Before the Court is the defendants' Petition for Attorneys' Fees [62], in which defendants seek an award of $141,654.71, consisting of $127,966.00 in attorneys' fees and $1,483.71 in costs that have already been invoiced for defending this civil action and $12,205.00 in fees and costs that have not yet been invoiced for preparation of the petition for attorneys' fees. The plaintiff has opposed the amount sought to the extent that it includes attorneys' fees for hours spent on an unsuccessful count. For the following reasons, the defendants will be awarded $114,547.88 in attorneys' fees and $5,483.71 in costs.

I. Background

Plaintiff BP Products North America, Inc. ("BP") brought this action for declaratory judgment pursuant to a Purchase and Sale Agreement between the parties for the sale of a retail gasoline station property by BP to the defendants, Charles V. Stanley ("Stanley") and his business, Telegraph Petroleum Properties ("Telegraph"). Specifically, BP sought to enjoin

defendants from violating a restrictive covenant on the property which limited the sale and use of petroleum products that were not BP-branded.

The parties filed cross-motions for summary judgment[1] and on July 15, 2010, the Court ruled in favor of the defendants. Section 43 of the Purchase and Sale Agreement provides that:

> A party to this Agreement who is the prevailing party in any legal proceeding... brought under or with respect to this Agreement... shall be additionally entitled to recover court costs and reasonable attorney's fees from the non-prevailing party.

Compl., Ex. 1 at ¶43.

The defendants, as the prevailing parties in this litigation, filed a petition for attorneys' fees under paragraph 43 seeking a total award of $141,654.71, which consists of $127,966.00 in attorneys' fees and $1,483.71 in costs that have already been invoiced and $12,205.00 in fees and costs that have not yet been invoiced. The plaintiff opposes the petition, requesting a thirty percent reduction in the fee award on the grounds that the defendants are not entitled to any award of fees on Count II of their

---

[1] The plaintiff moved for summary judgment on both counts of the complaint and both counts of the defendants' counterclaim. The defendants moved for summary judgment with respect to all counts except Count II of their counterclaim, which alleged that BP failed to act in good faith by conditioning the Purchase and Sale Agreement on defendants signing a 15-year Dealer Supply Agreement with Eastern Petroleum Corporation, whose rates were commercially unreasonable, in violation of the Uniform Commercial Code.

2

counterclaim.

## II. Discussion

Although the defendants are the prevailing parties, they still bear the burden of establishing that the fees and costs they seek are reasonable. See Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990). In arriving at a reasonable attorneys' fee, the Court first must determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable hourly rate. See Robinson v. Equifax Info. Servs., 560 F.3d 235, 243 (4th Cir. 2009). In determining the number of reasonable hours expended and a reasonable hourly rate, the Court considers the twelve factors set out in Barber v. Kimbrell's Inc. Id.; see also Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978). These Kimbrell factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

577 F.2d at 226 n.28. After deducting any fees that resulted

from time spent on unsuccessful claims, the Court evaluates the "degree of success enjoyed by the plaintiff" and arrives at a final reasonable fee. See Grissom v. The Mills Corp., 549 F.3d 313, 321 (4th Cir. 2008) (internal quotations and citations omitted).

### A. Reasonable Hourly Rate

The defendants were represented in this lawsuit by three different law firms. For representation by Redmon, Peyton & Braswell, LLP, the defendants seek an award of invoiced attorneys' fees of $112,992.50, which represents a total of 397.2 hours of work performed by one principal, one associate, and one staff member who provided administrative assistance. The hourly rates billed were: $350.00 for principal John E. Coffey, who has 31 years of experience, and $225.00 for associate Daniel D. Mauler, who has four years of experience, and $35.00 for staff member Suzan Rababe. For representation by Lerch, Early & Brewer, Chartered, the defendants seek an award of attorneys' fees of $10,273.50, which represents a total of about 27.4 hours of work performed by one principal with 31 years of experience, Harry C. Storm, whose hourly rates were $375.00. For representation by Dingman Labowitz, P.C., the defendants seek an award of attorneys' fees of $4,700.00, which represents a total of 11.75 hours of work performed by Peter A. Dingman, a

4

principal with 36 years of experience, at an hourly rate of $400.00.

Although the plaintiff has not objected to the hourly rates sought by the defendants, the defendants still have the burden of proving that the rates are reasonable. See Robinson, 560 F.3d at 243-45. To meet this burden, defendants have provided the affidavits of Mr. Coffey, Mr. Storm, Mr. Dingman, Mr. Mauler, and James S. Kurz, a litigator of complex commercial matters who practices in the Eastern District of Virginia. Mr. Kurz avers that all four defense attorneys were charging the Northern Virginia prevailing market rate for lawyers with the same amount of experience. Although Mr. Kurz refers to the Laffey Matrix, which the Fourth Circuit has held is not sufficient evidence of the prevailing rates in Northern Virginia, he relies heavily on the "Grissom Table," which has been upheld as representing acceptable parameters for prevailing market rates in Northern Virginia. See Grissom, 549 F.3d at 323. The Grissom hourly rates are: $335-380.00 for a partner with 18 or more years of experience, $250.00 for an associate with five to seven years of experience, $200.00 for an associate with two to three years of experience, and $180.00 for an associate with one year of experience. Id. As such, the Court finds that the rates charged by counsel for the defendants reflect the

prevailing market rates in the Eastern District of Virginia and were reasonable given the experience of each attorney.[2]

## B. Reasonable Number of Hours Expended

Defendants seek reimbursement for a total of 436.35 hours expended by the attorneys and staff for invoiced work. This figure consists of 198.1 hours of work performed by Mr. Coffey, 193.1 hours performed by associate Mr. Mauler, 27.4 hours performed by Mr. Storm, 11.75 hours performed by Mr. Dingman, and 6 hours performed by staff member Suzan Rababe.

The defendants have employed three separate law firms for this litigation, but have failed to explain why all three were necessary to this litigation. The lion's share of the work before this Court was performed by Redmon, Peyton & Braswell, including handling all the oral arguments before the Court. Therefore, the Court finds that under the first <u>Kimbrell</u> factor, the defendants have failed to establish that the time and labor expended by Lerch, Early & Brewer and Dingman Labowitz were necessary and reasonable. Accordingly, the Court will only award fees for the work billed by Redmon, Peyton & Braswell, which total $112,992.50.

---

[2] The only hourly rate that falls outside of the matrix provided in <u>Grissom</u> is that of Mr. Dingham, which is $400.00. However, this rate is slightly above the $380.00 hourly rate approved in <u>Grissom</u> for an attorney with 18-19 years of experience and Mr. Dingham has 36 years of experience. Moreover, for the reasons stated <u>infra</u>, the Court need not reach the issue of whether such a rate is reasonable.

The plaintiff argues that the attorneys' fee award should be further reduced because the petition includes fees for hours spent litigating Count II of defendants' counterclaim, on which the defendants did not prevail because they did not move for summary judgment on that claim. The degree to which a party has prevailed, or the amount in controversy compared with the results obtained, is considered the most important of the Kimbrell factors. In Hensley v. Eckerhart, the United States Supreme Court held that where a party "has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." 461 U.S. 424, 440 (1983). In addition, an attorneys' fee should bear some reasonable relationship to the recovery. See Farrar v. Hobby, 506 U.S. 103, 114 (1992) ("'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'").

BP argues that the defendants did not distinguish the hours expended on their prevailing claims and defenses from hours spent on Count II of the counterclaim and that the defendants' failure on Count II should be factored into their relative success. The defendants respond that Count II of their counterclaim was intertwined with Count I and their

7

defenses to the complaint, and that the ultimate outcome, invalidation of the deed restriction, was the entire relief sought. Moreover, of their 14-page Answer and Counterclaim, Count II comprised only one and a half pages, and the defendants did not even address Count II of their counterclaim in opposing the plaintiff's motion for summary judgment, which moved for judgment on that count. Indeed, in ruling in the defendants' favor on Count I of their counterclaim, there was no further need for the Court to reach Count II. However, Count II did require some additional development of facts, regarding the nature of Eastern's pricing, and of legal theories, regarding reasonable pricing models under the Uniform Commercial Code. Given that the defendants ultimately obtained the full relief sought, only a slight reduction for time spent on alternative theories is appropriate. Accordingly, the Court will further reduce the fee award by five percent for the work performed with respect to these issues.

None of the other Kimbrell factors warrant an increase or any further reduction of the attorneys' fee award, nor does the plaintiff object to the petition based on any of those Kimbrell factors. The questions raised in the lawsuit were essentially issues of contract and trade, which were not particularly novel or difficult issues, although they did

require some special knowledge and understanding of the petroleum market. The defendants ultimately prevailed on an argument that involved some creative legal thinking. As mentioned supra, the lead defense counsel, John E. Coffey, had over 30 years of experience, which was properly reflected in his hourly rate. There was nothing particularly desirable or undesirable about this type of case within the Northern Virginia legal community and the Court has no knowledge of the nature and length of the professional relationship between attorney and client. The opportunity costs in pursuing the litigation, the attorneys' expectations at the outset of the litigation, the time limitations imposed by the client or circumstances, and attorneys' fees awards in similar cases also do not weigh heavily on one side or the other.

For these reasons, the Court determines that a total attorneys' fee award of $107,342.88 for defense counsel's invoiced work is reasonable.

### C. Costs

The defendants also request that they be awarded $1,483.71 in costs. BP objects to $1,000.00 of these costs, which was for a report from "Oil Price Information Service" of gasoline retail prices within a three mile radius of defendants' service station. The purpose of this report was

require some special knowledge and understanding of the petroleum market. The defendants ultimately prevailed on an argument that involved some creative legal thinking. As mentioned supra, the lead defense counsel, John E. Coffey, had over 30 years of experience, which was properly reflected in his hourly rate. There was nothing particularly desirable or undesirable about this type of case within the Northern Virginia legal community and the Court has no knowledge of the nature and length of the professional relationship between attorney and client. The opportunity costs in pursuing the litigation, the attorneys' expectations at the outset of the litigation, the time limitations imposed by the client or circumstances, and attorneys' fees awards in similar cases also do not weigh heavily on one side or the other.

For these reasons, the Court determines that a total attorneys' fee award of $107,342.88 for defense counsel's invoiced work is reasonable.

### C. Costs

The defendants also request that they be awarded $1,483.71 in costs. BP objects to $1,000.00 of these costs, which was for a report from "Oil Price Information Service" of gasoline retail prices within a three mile radius of defendants' service station. The purpose of this report was

"to evaluate the reasonableness of gasoline prices charged by BP's assignee, Eastern Petroleum Corporation," (Pet. for Att'ys' Fees at 7-8), which BP correctly argues was not relevant to the defendants' prevailing claims but only to Count II of the defendants' counterclaim. That cost will not be awarded because the defendants did not ultimately prevail on Count II. For these reasons, only $483.71 in invoiced costs will be awarded.

### D. Fees and Costs for Attorneys' Fee Petition

Finally, the defendants request that the Court award an additional $12,205.00 in fees and costs incurred in the preparation of their petition for attorneys' fees. A court has discretion to award fees and costs for preparation of a petition for attorneys' fees. See Employers Council on Flexible Compensation v. Feltman, No. 1:08-cv-371, slip op. at 15-16 (E.D.Va. January 13, 2010)(citing Daly v. Hill, 790 F.2d 1071, 1080 (4th Cir. 1986)).

Although the defendants have not provided invoices for the fees and costs incurred in preparation of the fee petition, the affidavits attached to the petition establish the amount of fees and costs. In his declaration, associate Daniel Mauler states that he spent at least 14.6 hours of work preparing the fee petition, which, at an hourly rate of $225.00 per hour, totals $3,285.00 in attorney's fees.

Principal John Coffey, in his declaration, states that he spent 11.2 hours preparing the fee petition, which, at an hourly rate of $350.00, totals $3,920.00 for his attorney's fees. The defendants also hired an expert on the reasonableness of fees, James S. Kurz, who states in his declaration that his fee for research and the preparation of his declaration was $5,000.00. Therefore, in the preparation of the petition for attorneys' fees, the defendants incurred a total of $12,205.00, consisting of $7,205.00 in attorneys' fees and $5,000.00 in costs. As these fees and costs are reasonable and the plaintiff has not objected to them, they will be awarded.

### III. Conclusion

For all these reasons, the Court finds that a total award of $120,031.59, consisting of $114,547.88 in attorneys' fees and $5,483.71 in costs is reasonable and will be awarded by an Order to be issued with this Memorandum Opinion.

Entered this 1st day of September, 2010.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge